UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CINDY DIXON CROMWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 97-2257 (PLF) |
| | ) | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

OPINION

This matter is before the Court on defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. In her Second Amended Complaint ("2d Am. Compl."), plaintiff alleges that her employer, defendant Washington Metropolitan Area Transit Authority ("WMATA"), engaged in discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. On March 31, 2006, this Court entered an Order and Judgment granting the defendant's motion for summary judgment. This Opinion explains the reasoning underlying that Order.

I.   BACKGROUND

Plaintiff Cindy Dixon Cromwell, an African-American woman, has worked as a construction inspector for WMATA since September 1986. During the time period relevant to this lawsuit, January 1993 through January 1994, Ms. Cromwell was assigned to the Greenbelt Station Parking Lot project. As a construction inspector, plaintiff spends most of her time in the

field observing the progress of construction projects.  See Defendant's Motion for Summary Judgment ("Def.'s Mot.") Ex. 5, December 21, 2000 Deposition of C. Cromwell ("Cromwell Dep. 12/21/00") at 9:20-10:10.

Plaintiff alleges six acts of race-based discrimination, occurring between January 1993 and January 1994.  Ms. Cromwell alleges that: (1) between January and May 1993, plaintiff's supervisor prevented her from earning overtime compensation, while assigning overtime to two white inspectors, see 2d Am. Compl. ¶ 8; (2) defendants sought to transfer plaintiff to a different project under a new supervisor, id. ¶ 9; (3) in May 1993, two WMATA police officers, at defendant's behest, detained plaintiff and interrogated her regarding personal matters, id. ¶ 11; Cromwell Dep. 12/21/00 at 54:6-21; (4) after plaintiff injured her back and wrist on the job on May 18, 1993, defendant "denied, delayed and/or frustrated the plaintiff from utilizing the sick leave bank and/or annual leave during her convalescence period," 2d Am. Compl. ¶ 12; (5) defendant denied plaintiff's request to return to work on light duty status on September 23, 1993, id. ¶ 13; and (6) after plaintiff's injury, plaintiff's supervisor  threatened to terminate her because she failed to provide adequate documentation of her medical condition.  See id. ¶ 14.

In response to these alleged acts of discrimination, Ms. Cromwell wrote to Senator Barbara Mikulski and Representative Albert Wynn on July 15, 1993.  See 2d Am. Compl. ¶ 10.  Plaintiff alleges that she suffered retaliation as a result of her contact with these legislators, although she fails to specify which acts were retaliatory.  See id. ¶¶ 17, 19.

II.   DISCUSSION

*A.   Standard for Summary Judgment*

Summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits [or declarations], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).

The non-moving party's opposition must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's

evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.

*B. Statement of Material Facts*

The Local Civil Rules of this Court require a motion for summary judgment to be "accompanied by a statement of material facts as to which the moving party contends there is no genuine dispute," and any opposition brief must include "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated[.]"  LCvR 7(h).  Either form of statement "shall include references to the parts of the record relied on to support the statement."  Id.  In ruling on the motion for summary judgment, "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Id.

The purpose of the Rule is to "[isolate] the facts that the parties assert are material, [distinguish] disputed from undisputed facts, and [identify] the pertinent parts of the record."  Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Tarpley v. Greene, 684 F.2d 1 (D.C. Cir. 1982)).  While it is not necessary that a Rule 7(h) statement be labeled as such, any filing intended to serve the purpose of a Rule 7(h) statement should comply with the Rule's plain terms and this purpose.  See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 153 (D.C. Cir. 1996).  When a statement purports to specify genuine factual issues but does not "set forth specific, material facts, [and] simply [asserts], without citing evidence in the record, that there [is] a disputed issue," it fails to comply with the Local Rule.  Burke v. Gould, 286 F.3d at 518.

When a non-moving party fails to comply with Local Rule 7(h), the Court may assume that the facts identified by the moving party are admitted. See Local Rule 7(h); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 154. The Court is not obligated "to sift and sort through the record, that is, engage in time-consuming labor that is meant to be avoided through the parties' observance of [the Rule]." Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d at 153. Nonetheless, even when a party's statement of material facts is unopposed, the Court is obliged to "determine whether the [party's] statement of undisputed material facts [is] 'adequately supported' by the record." Id. (quoting McKinney v. Dole, 765 F.2d 1129, 1156 n.12 (D.C. Cir. 1985)).

Plaintiff does not include a separate statement of material facts in dispute, but does discuss facts in her opposition brief, which includes a section entitled "A Dispute of Material Facts Exists Concerning the Plaintiff's Disparate Treatment Claims." This portion of the brief, however, is no more than a recitation of the factual allegations in plaintiff's Second Amended Complaint, and provides no citations or references to record evidence. Compare Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp.") at 1-3 with 2d Am. Compl. ¶¶ 6-14 and Pl.'s Opp., Attach. A, Plaintiff's Answer and Objections to Defendant's First Interrogatories, at 5 (Answer 4). She submits no affidavits, declarations or excerpts from depositions in support of her opposition. By contrast, defendant does offer excerpts from depositions, affidavits and other evidence – which plaintiff does not challenge or contradict by counter-designations or affidavits – in support of its Statement of Material Facts Not in Dispute. See Defendant's Statement of Material Facts Not in Dispute, attached to Def.'s Mot. ("Def.'s SMF").

As noted, *supra*, where the moving party's factual assertions are uncontroverted, the Court may consider these facts as admitted. See LCvR 7(h); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d at 154; Glovinsky v. Cohn, 983 F. Supp. 1, 3 (D.D.C. 1997). Furthermore, Rule 56(e) of the Federal Rules of Civil Procedure explicitly states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e); see also Burke v. Gould, 286 F.3d at 517; 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2739 (3d ed. 2004).

### C.  Race Discrimination Claims

To survive a motion for summary judgment on a Title VII employment discrimination claim, a plaintiff must first introduce evidence to support a *prima facie* case of discrimination, showing that: (1) she is a member of a protected class; (2) she has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005); Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002); Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999). One way a plaintiff can show that an adverse action gives rise to an inference of discrimination is by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class. See George v. Leavitt, 407 F.3d at 412. A plaintiff who attempts to

make out a *prima facie* case on this disparate treatment basis bears the burden of proving that proffered comparators are in fact similarly situated to plaintiff. See Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999) ("A plaintiff must also demonstrate that all of the relevant aspects of her employment situation were nearly identical" to those of the employee who is not a member of the protected class.) (internal citations and quotations omitted).

"An 'adverse employment action' . . . is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006). An adverse action has occurred "when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting Forkkio v. Powell, 306 F.3d 1127, 1130-31 (D.C. Cir. 1999)). "'[P]urely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions[.]" Id.

A plaintiff who makes out a *prima facie* case of disparate treatment establishes a presumption of discrimination, and shifts the burden to the employer-defendant to produce evidence that the challenged action was taken for a legitimate, nondiscriminatory reason. See Holcomb v. Powell, 433 F.3d at 896. Once a defendant has done so, the presumption of discrimination "simply drops out of the picture," and "the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Id. at 896-97 (quoting Burke v. Gould, 286 F.3d at 520 and Lathram v.

Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003)). "All of the evidence" may include (1) evidence establishing the plaintiff's *prima facie* case; (2) evidence attacking the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer. See Holcomb v. Powell, 433 F.3d at 897.

In support of her race discrimination claim, plaintiff alleges that defendant: (1) prevented plaintiff from earning overtime compensation while white supervisors did; (2) unilaterally transferred plaintiff to another job site; (3) effectuated plaintiff's arrest or detention by law enforcement officials; (4) denied/delayed her sick leave; (5) refused plaintiff light duty status after her injury; and (6) threatened to terminate plaintiff because she failed to provide documentation of her medical condition, while similarly situated white employees allegedly were not subject to the same treatment. See 2d Am. Compl. ¶¶ 8-14, 17. Defendant argues that these incidents do not rise to the level of materially adverse employment actions, and further argues, with respect to several of them, that plaintiff has presented no evidence from which an inference of discriminatory motive could arise.

The Court will analyze each of the alleged adverse employment actions individually.

1. Denial of overtime

Plaintiff alleges that from January to May of 1993, plaintiff's supervisor "prevented the plaintiff from earning overtime compensation at the Greenbelt Station Parking Lot." 2d Am. Compl. ¶ 8. With respect to the alleged denial of overtime, plaintiff has failed to

demonstrate that similarly situated employees outside of her protected class were not subject to the same kind of treatment, alleged by plaintiff to be an adverse employment action. Although plaintiff alleges that white employees David Schap and William Hotaling were granted overtime, defendant has presented undisputed evidence that these employees are simply not similarly situated to plaintiff. Mr. Schap and Mr. Hotaling worked on different projects than Ms. Cromwell during the relevant period. See Def.'s Mot., Attach., Affidavit of Debra Farrar-Dyke ("Farrar-Dyke Aff.") ¶ 6. Mr. Schap was transferred to Ms. Cromwell's project on November 3, 1993, months after the relevant period, and Mr. Hotaling joined her project on April 29, 1993, only days before the end of the relevant period. See Farrar-Dyke Aff. ¶¶ 4-5; Def.'s Mot, Attach., Affidavit of James Schreck ("Schreck Aff.") ¶¶ 2-3. Furthermore, defendant has provided sworn affidavits averring that neither of these employees were granted overtime during the relevant period. See Schreck Aff. ¶ 2-6; see also Def.'s SMF at 2. Plaintiff has not contested this evidence. Therefore, plaintiff has failed to make out a *prima facie* case of disparate treatment discrimination based on these facts.

2. Transfer

Plaintiff also alleges in her complaint that in April of 1993 "the defendant unilaterally transferred the plaintiff to another job site without cause." 2d Am. Compl. ¶ 9. This allegation, however, is unsupported by any evidence. To the contrary, plaintiff herself testified in her deposition that while defendant had proposed to transfer her to another project in April 1993, WMATA rescinded the decision to transfer after plaintiff voiced concerns about the individual who would have been her new supervisor. See Cromwell Dep. 12/21/00 at 22:6-18; Def.'s Mot. at 3. The cancelled transfer did not result in any reduction in pay, benefits or other

objectively tangible harm to plaintiff. It therefore does not constitute an "adverse employment action" under Title VII. Plaintiff has failed to make out a *prima facie* case of discrimination based on these facts.

### 3. Detention by WMATA police

Plaintiff also alleges that in May 1993, defendant arranged for plaintiff's "arrest" by WMATA police officers, who took her into custody to "interrogate her regarding her personal life and other non-criminal and/or non-work related matters." 2d Am. Compl. ¶ 11. The officers entered the Greenbelt Office of WMATA and drove Ms. Cromwell and two white employees, Mr. Hotaling and Mr. Schap, to the Greenbelt Police Station. At the station the officers questioned each employee separately. Officers asked Ms. Cromwell work-related questions and personal questions pertaining to the identity of her husband and her child's father. See Cromwell Dep. 12/21/00 at 54:6-21. Although Ms. Cromwell describes the event as an "arrest," at no time were the employees handcuffed nor did the employees complete paperwork for arrest. See id. at 52:8-13. Plaintiff fails to allege or to demonstrate that she was treated differently from other similarly situated white employees in this respect. To the contrary, the evidence (including plaintiff's own deposition) shows that two white employees, Mr. Hotaling and Mr. Schap, were subject to identical treatment by WMATA police officers on the same day. See Def.'s Mot. at 4; Cromwell Dep. 12/21/00 at 55:19-25. While the incident may have been traumatic or embarrassing and the environment uncomfortable, the evidence proffered does not support a *prima facie* case of race discrimination. See Holcomb v. Powell, 433 F.3d at 902 ("Although purely subjective injuries, such as . . . public humiliation, or loss of reputation, are not adverse actions, the threshold is met when an employee experiences materially adverse consequences

10

affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.") (internal quotes and citations omitted); see also Broderick v. Donaldson, 437 F.3d at 1233 ("Not everything that makes an employee unhappy is an actionable adverse action.").

### 4. Denial/delay of sick leave benefits

Plaintiff also alleges that after she incurred on-the-job injuries in May 1993, defendant "denied, delayed, and/or frustrated the plaintiff from utilizing the sick leave bank and/or annual leave during her convalescence period." 2d Am. Compl. ¶ 12. The undisputed evidence in the record shows, however, that while plaintiff's initial request of June 28, 1993 was denied, a revised request was granted on August 20, 1993. See Def.'s Mot. at 5; Def.'s SMF at 4-5. A mere delay does not constitute an adverse personnel action. See Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (delay in receiving employee performance evaluations not an adverse action because they did not affect plaintiff's grade or salary). Plaintiff used all of the sick and annual leave benefits to which she was entitled and the full number of days she was due from the sick leave bank. See Cromwell Dep. 5/10/01 at 16:9 and 17:7. As a result, plaintiff has failed to make out a *prima facie* case of discrimination based on these facts.

Even if plaintiff had established her *prima facie* case of discrimination in this respect, defendant has offered a legitimate, nondiscriminatory reason for temporarily denying plaintiff her benefits. Although plaintiff requested sick leave benefits on June 28, 1993, defendant has provided evidence that plaintiff did not include the requisite documentation of the injury, dates of treatment, and duration of illness at that time. See Def.'s Mot., Ex. 14, Letter

from C. Cromwell to M. Ruston of 06/28/93.  A standard form is customarily used for sick leave requests and, although on prior occasions plaintiff had filled out the form and received benefits, on this occasion she did not.  See Def.'s SMF at 4.  Ms. Cromwell admitted in her deposition that she did not submit the standard form with her request.  See Cromwell Dep. 5/10/01 at 19:8-18.  After the form was completed for her on or about August 9, 1993, defendant authorized the distribution of benefits on August 24, 1993.  See Cromwell Dep. 05/10/01 at 19:8-18; 24:2-11; 25:2-8; Def.'s Mot., Ex. 15, Approval of Sick Leave Bank Usage for Cromwell of 08/24/93.  Plaintiff neither challenges defendant's proffered reason nor introduces any other evidence to show a discriminatory motive.  See Pl.'s Opp. at 3.  Because plaintiff has not only failed to make out her *prima facie* case, but also failed to rebut defendant's proffered legitimate, nondiscriminatory reason for delaying her receipt of sick leave benefits, this claim also fails.

5. Denial of light duty

Plaintiff also asserts a claim of discrimination based on defendant's refusal to allow her to return to work on light duty status after her injury.  See 2d Am. Compl. ¶ 13.  But plaintiff has identified no similarly situated individuals who were treated differently.  Plaintiff names three white individuals who were allowed to work light duty; however, the defendant has provided undisputed evidence that these employees were not similarly situated to the plaintiff.  Ms. Cromwell works as a construction inspector, a position which demands substantial field work.  See Farrar-Dyke Aff. ¶ 7.  As a preliminary matter, as a matter of policy defendant does not allow construction inspectors to return to work on a light duty basis.  See id. ¶¶ 7-8.  Those employees plaintiff alleges were awarded light duty -- Max Jonah, Dough Lombard and Cheryl McKinlay -- were employed in supervisory and office positions, positions that do provide a

light-duty option. Mr. Jonah is employed as an office engineer, Mr. Lombard is a quality control engineer, and Ms. McKinlay is a supervisory construction inspector. See Farrar-Dyke Aff. ¶¶ 9-11; Def.'s SMF at 6-7. These individuals are not similarly situated to plaintiff. As a result, plaintiff has failed to make out a *prima facie* case of race discrimination based on these facts.

### 6. Threats of termination

Finally, plaintiff alleges that during the summer and fall of 1993, plaintiff's supervisor "repeatedly harassed the plaintiff by threatening her with termination due to the alleged insufficiency of her medical documentation." 2d Am. Compl. ¶ 14.[1] At her deposition, however, the plaintiff conceded that after her request for light duty was denied, she was not terminated, but allowed to go on extended medical leave without pay. See Def.'s Mot at 9. "An 'adverse employment action' . . . is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

---

[1] Although it asks the Court to declare that plaintiff was the subject of "race-based harassment," the complaint does not assert a hostile work environment claim under Title VII. See 2d Am. Compl. at 4-5. Plaintiff could not make out such a claim because harassment only becomes an actionable harm under this theory "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems Inc., 510 U.S. 17, 22 (1993). The few letters and phone calls plaintiff received from her supervisor during the summer and fall of 1993, see Cromwell Dep. 05/10/01 at 38:16-19, are simply not "severe or pervasive" enough to support a hostile work environment claim. In any event, plaintiff has presented no evidence indicating that the harassment occurred because of her race. Although the harassment itself need not contain racially hostile content, plaintiff still bears the burden of showing that the harassment was due to her race. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996); Bowdre v. Richardson, 131 F. Supp. 2d 179, 187 (D.D.C. 2001). As the Supreme Court has said, Title VII is not intended to become a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). See also Richard v. Bell Atlantic Corp., 209 F. Supp. 2d 23, 35 (D.D.C. 2002).

causing significant change in benefits.'" Broderick v. Donaldson, 437 F.3d at 1233. Plaintiff's allegations regarding the "threats of termination" do not rise to the level of an adverse employment action. Plaintiff also has not shown that the alleged threats of termination were a result of discrimination, rather than because of the insufficiency of the documentation of her medical condition. See supra at 11-12. As a result, plaintiff has failed to make out a *prima facie* case of discrimination based on these facts.

### D.   Retaliation

Plaintiff also asserts a claim of retaliation, alleging that she "engaged in protected activity by complaining about the defendant's discriminatory transfer of the plaintiff to United States [Senator] Barbara Mikulski and United States Representative Albert Wynn[,]" and that defendant retaliated against her for so doing. See 2d Am. Compl. ¶ 10; Pl.'s Opp. at 2. To establish a *prima facie* case of retaliation, "the plaintiff must present evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse action against her; and (3) the adverse action was causally related to the exercise of her rights." Holcomb v. Powell, 433 F.3d at 901-02 (internal quotations and citations omitted); see also Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006). Plaintiff may demonstrate that a causal connection exists with proof of both defendant's knowledge of her protected activity and temporal proximity between the protected activity and retaliation. See Holcomb v. Powell, 433 F.3d at 903; Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 84 (D.D.C. 2003). The plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in the case of a retaliation claim means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington

Northern & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2415 (2006) (internal quotations and citations omitted).

While plaintiff clearly engaged in protected activity by writing to her Senator and Congressman, the record simply does not demonstrate that plaintiff was subject to an adverse action as a result of this protected activity or any other. The plaintiff does not devote any portion of her opposition to the motion for summary judgment to her retaliation claim, other than to mention it. Compare Pl.'s Opp. at 4 ("The plaintiff maintains the defendant engaged in disparate treatment and retaliation discrimination against her . . . in contravention of Title VII.") with Pl.'s Opp. at 13 ("Accordingly, plaintiff's disparate treatment claim could implicate Title VII protections. For the foregoing reasons, this Court should dismiss the defendant's motion for summary judgment."). And she certainly has provided no evidence, by affidavits or otherwise, setting forth "specific facts showing that there is a genuine issue for trial" on the claim of retaliation. FED. R. CIV. P. 56(e).

It is undisputed that on July 15, 1993, plaintiff wrote letters to Senator Barbara Mikulski and Representative Albert Wynn. See Def.'s Mot. Ex. 16, July 15, 2003 Letter from C. Cromwell to B. Mikuski and July 15, 2003 Letter from C. Cromwell to A. Wynn. But plaintiff does not specifically allege or otherwise demonstrate that defendant took any retaliatory actions in response to her having contacted her congressional representatives. The only actions referenced in the complaint which occurred after July 1993 – and hence could even in theory be causally related to the letters written to Senator Mikulski and Representative Wynn – are that "during the summer and fall of 1993," plaintiff was "threatened with termination due to the

alleged insufficiency of her medical documentation."[2]  See 2d Am. Compl. ¶ 14.  The plaintiff does not directly allege that this action was in response to her letter-writing, nor does she present any evidence supporting such a conclusion.  The Court finds that no reasonable jury could conclude that Ms. Cromwell was the victim of retaliation on these facts.  Accordingly, the Court grants summary judgment to defendant with respect to plaintiff's claim of retaliation.

### III. CONCLUSION

Based on the record in this case and for the reasons set forth herein, the Court finds that plaintiff has failed to set forth specific facts in support of her allegations and, standing alone, Ms. Cromwell's allegations do not give rise to a genuine issue of material fact.  The Court therefore grants summary judgment for defendant as a matter of law.  An Order and Judgment consistent with this Opinion was issued on March 31, 2006.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  September 5, 2006

---

[2] Plaintiff was away from work due to her back and wrist injuries from May 1993 until January 7, 1994.  See Def.'s Mot. at 3; 2d Am. Compl. ¶¶ 12-13.  It is uncontested that the plaintiff's documentation for her sick leave was inadequate.  See Cromwell Dep. 5/10/01 at 19:8-18.